### PHILIPS v. GRESS MFG. CO.

(Circuit Court of Appeals, Fifth Circuit. June 3, 1921.)

No. 3621.

1. **Master and servant ☞80(8)—Evidence held insufficient to prove a modification of profit-sharing contract.**

   In a suit for an accounting by one party to a profit-sharing contract, in which both parties alleged a modification of the original contract, where their testimony was in direct conflict, *held*, that neither had sustained the burden resting on him to prove the modification and the terms of the original contract *held* to govern their rights in profits made in an outside transaction not contemplated when the contract was made.

2. **Frauds, statute of ☞44(1)—Parol agreement to terminate written contract and substitute another not to be performed in one year held invalid.**

   An alleged parol agreement for the termination of a written contract and the substitution of a different contract not to be performed within one year, *held* invalid and not enforceable, under the law of Florida.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit in equity by J. L. Philips against the Gress Manufacturing Company. Decree for defendant, and complainant appeals. Reversed.

W. E. Kay, Thomas B. Adams, and J. L. Doggett, all of Jacksonville, Fla., for appellant.

William M. Toomer and George C. Bedell, both of Jacksonville, Fla., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. Appellant filed his bill to compel appellee to account to him for profits arising out of the sales of lumber and cross-ties. In the year 1913 appellant and appellee entered into a profit-sharing contract. Appellant, a man thoroughly acquainted with the lumber industry, had recently failed in business. Appellee, a Florida corporation, with headquarters at Jacksonville and a branch office in New York, was a manufacturer, and also acted as broker in the purchase and sale, of lumber and cross-ties. The contract provided for the establishment and maintenance of a separate office in Philadelphia for the sale of lumber, and for the equal division of net profits. Appellant was entitled to a drawing account of $500 per month, to be deducted from his share of the profits. The contract, which was evidenced by a letter from appellee to appellant, also provided:

"It is understood that you are to perform any services not outlined above, which may be in the general interest of the Gress Manufacturing Com-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany, such as looking after the sales of cross-ties, etc.; but the tie business is expressly excepted from any division of profit. * * * You are not to sell any one in the New England states, or in the state of Virginia," etc.

The Philadelphia office was conducted in the name of the appellee company, and appellant was designated one of its vice presidents, although he never owned any shares of its capital stock. In 1914, while the contract was in force, there came a very great depression in the lumber trade on account of the war. Appellant agreed that his drawing account should be reduced temporarily to $350 per month. During this period of depression, M. W. Mercereau, president of the Valley Tie & Lumber Company, a Virginia corporation, received an invitation to go to London, with the end in view of furnishing lumber and cross-ties to the Great Eastern Railway Company of England. Mercereau was desirous of arranging to purchase for the railway company on a commission basis. He dealt in oak cross-ties, but, being unfamiliar with business dealings in either pine lumber or pine cross-ties, he requested M. V. Gress, appellee's president, to accompany him to London, after having acquainted him with the purpose of the trip. Being unable to comply, Gress sent the following telegram, dated October 3, 1914, to Philips, the appellant:

"Would you be agreeable to going to London Tuesday sixth with Mercereau cross tie proposition."

Philips agreed and accompanied Mercereau. Philips claims Gress agreed that the profit-sharing contract should apply to any business which might result out of, or because of, this trip. On the other hand, Gress claims that Philips agreed to take the trip without financial interest in it and merely for his drawing account. While in England, Mercereau was successful in securing for the Valley Tie & Lumber Company a commission from the Great Eastern Railway Company of England to purchase approximately 4,000,000 feet of lumber and 250,000 cross-ties. Appellant promptly notified appellee of this fact, and wrote to it a letter stating that Mercereau would purchase both the lumber and cross-ties from appellee, and named prices which he stated had been agreed upon. A few days later, and on December 3, 1914, Mercereau, for the Valley Tie & Lumber Company, and appellant, for the appellee company, executed in England an agreement which contained the following paragraph:

"It is understood and agreed that on the contract entered into by the Valley Tie & Lumber Company with the Great Eastern Railway Company of England for sleepers (cross-ties) and pitch pine timbers that the Gress Manufacturing Company is to furnish and does hereby agree to furnish the material called for in said contract at prices which it is now prepared to name, but which the Valley Tie & Lumber Company prefer shall be agreed upon on our return to New York and said Valley Tie & Lumber Company have had opportunity to satisfy themselves that prices named by the Gress Manufacturing Company are as low as is consistent with good material and responsible and satisfactory furnishing of this supply."

December 30, 1914, Philips and Gress met Mercereau by appointment at Staunton, Va., and there entered into a contract for the fur-

nishing by appellee to the Valley Tie & Lumber Company of the materials referred to in the earlier contract signed in England, at the prices there agreed upon. Appellant testified that the prices were not inserted in the contract of December 3d, although agreed upon and thoroughly understood, for the reason that Mercereau wanted to go through the form of taking competitive bids after he returned to the United States. At the time testimony was taken, M. W. Mercereau had died; but appellant is corroborated in this statement by E. K. Mercereau, the vice president of the Valley Tie & Lumber Company. When the parties gathered at Staunton, Gress at first named higher prices than had been agreed upon in England; but Mercereau insisted upon those prices, and intimated that Gress was undertaking to repudiate the agreement already made. Thereafter the bid of appellee company was reduced to conform substantially to the prices agreed upon at the time the contract of December 3d was drawn up and executed. Within a few days, appellant had secured the acceptance by responsible lumber and cross-tie dealers of orders for both lumber and cross-ties, which were afterwards filled at a considerable profit to appellee.

M. V. Gress, appellee's president, gave testimony, which was contradicted by appellant, to the effect that appellant on December 29, 1914, agreed, in the language of the answer, "that the contract for the opening and conduct of the said Philadelphia office, the transactions had in the said office of this defendant and the losses, failures and obligations in connection therewith, be blotted out of the memory of the parties and be mutually and entirely canceled and satisfied," and that appellant should enter the service of appellee at a salary of $5,000 per annum, and in addition should receive at the end of two years stock therein to the amount of $10,000.

[1] The evidence was taken before an examiner and, upon final hearing, the District Court dismissed the bill for the reasons stated in the opinion, as follows:

"It was contended on behalf of the defendant that it intended by such telegram under the circumstances to have the complainant go for his drawing account and expenses, while the complainant contends that his understanding was that he was to go on account of the profit-sharing arrangement. It seems to me that in the light of the surrounding circumstances; the fact that the contract under which profits were to be divided specifically excluded cross-tie business from that arrangement, the contention of the defendant is the most reasonable, unless the testimony shows by a preponderance, as the complainant contends, that a clear and definite understanding was reached in New York City by the complainant and Gress, the president of the defendant, that the business obtained as a result of such trip should be on the profit-sharing account. To establish this understanding the complainant relies upon his testimony and certain communications. This understanding is denied by Gress and by certain other persons to whom the complainant claimed to have stated such understanding. I do not find that the testimony shows such understanding by a preponderance, and therefore must find for the defendant on this issue. * * * The bill of complaint seeks also an accounting of the affairs of the Philadelphia office. In this case I find no demand for such accounting, except in connection with the London trip, and no refusal by the defendant to render such accounting, and on this phase of the case I find in favor of the defendant."

Under the profit-sharing contract, and without any modification of it, appellant was entitled to share in the profits on the lumber, but he was not entitled to share in profits on the cross-ties sold to the Valley Tie & Lumber Co. The provision to the effect that appellant was to perform any services not specified in the contract which might be in the general interest of appellee, and relied upon to defeat an accounting, is not to be interpreted as being sufficient to require appellant to engage gratuitously in an undertaking so important as the one which he performed. The character of service involved in a trip to Europe was within the class of business appellant was expected to do, and which was provided for in the profit-sharing contract.

It is also contended that appellant is precluded from recovery under the terms of the contract, which provide that he should not sell to any one in the state of Virginia. The argument is that the contract executed in England was not binding, because the prices and terms and conditions of delivery were not fixed. The contract was signed in Virginia merely for the convenience of the parties. It was to be performed elsewhere. Deliveries were actually made at South Atlantic and Gulf ports, and payments were made at Philadelphia. Besides, the parties by their conduct have placed an interpretation upon this clause of the contract by which it was made to prohibit only the sales by appellant of lumber to be used or consumed within the state of Virginia.

[2] The contention that appellant had agreed to surrender any rights under the profit-sharing contract, and to accept employment by appellee for a period of years at a fixed salary and for stock, is easily disposed of. It is admitted that such an agreement was never reduced to writing. It was, under its very terms, a contract not to be performed within a year, and was, therefore, unenforceable. McCrimmon v. Brundage, 53 Fla. 478, 43 South. 431.

The objection that Philips was a vice president of the appellee company assumes a state of facts which the evidence does not support. He could not be an officer without being a stockholder; and therefore it becomes unnecessary to consider whether the profit-sharing contract would be enforceable if appellee had entered into it with one of its real directors. The court below properly overruled these various contentions.

The burden of proof is, of course, upon the party asserting a change in the profit-sharing contract. Appellant claims the contract was so modified as to entitle him to share in profits arising out of the sales of cross-ties, and the burden is upon him to prove that modification. We agree with the District Judge that he failed to do so. The testimony is in direct conflict. There were only the two interested parties present, and there are not enough corroborating circumstances to justify the conclusion that the contract was so changed. Likewise, the burden was upon appellee to show that the profit-sharing contract was modified so as to take out of it the right of appellant to share the profits on lumber sold to the Valley Tie & Lumber Company. We realize that the opinion of the trial court on the evidence is entitled to great weight.

In this case, however, the District Judge did not hear the testimony, nor have the benefit of the opinion of a master, and we are constrained to hold that appellee did not sustain the burden of proving the modification it must establish in order to defeat an accounting of profits on lumber sold to the Valley Tie & Lumber Company. Just as the modification claimed by Philips is denied by Gress, so is the modification claimed by Gress denied by Philips. As Philips has failed to meet the burden required of him, so also has appellee failed to meet the burden required of it, to modify the written contract. We are of opinion that no change in the contract has been proved by either party, in so far as the English business is concerned. It is not reasonable to believe that appellee would have asked appellant to waive a right to share in profits in the very business he depended upon for a living. It is less likely that Philips would have yielded to a suggestion of that kind if made, or would have agreed to forego all opportunities to make profits out of the business in which he was engaged during the time he would necessarily be absent. It is not customary for men engaged in business either to make or to grant such requests.

If Philips could be expected to give up his share of profits, then it is difficult to understand why he engaged in this business at all. There was no reason for him to go for his drawing account. That was secured to him under his contract, and would have been advanced to him in any event. Besides, he was chargeable with that out of his share of the profits. If he went for that, he went for nothing. His subsequent conduct was not that of a man who had no financial interest in what was taking place. On the contrary, he was insistent on coming to terms with Mercereau. He objected to the action of Gress in attempting to secure higher prices, because he feared the contract would go elsewhere. After it was signed, he was most energetic in placing orders. Such conduct; on the part of a man who has no business interest in the transactions being carried on, would be most unusual. While Gress' mind dwelt more upon cross-ties than upon lumber, it was but natural that Philips was thinking more of lumber than cross-ties. Mercereau did not ask Gress to accompany him for the purpose of aiding him in the sale of cross-ties alone. Gress testified that he wanted assistance in securing orders for both lumber and cross-ties. With this knowledge, Gress telegraphed Philips that he wanted him to go to England on "a cross-tie proposition," withholding from him, for the time being at least, information that there might be an opportunity also for the sale of lumber; and although it be assumed that Philips would have gone to England merely for the purpose of selling cross-ties, if they alone were involved, it is highly improbable, it seems to us, that he would have agreed to surrender an opportunity to earn a profit in the sale of lumber.

Appellee claims appellant relied wholly upon a modification of the contract, because of the presence in the bill of the following averment:

"That before your orator left for England it was specifically understood by and between your orator and the defendant herein that any sales your orator

might effect in England were to go in the joint account of your orator in the conduct of the said Philadelphia business."

The bill also averred, however, that appellant had no other contractual relation with appellee, prior to the trip to England, than that created by the profit-sharing contract, and modifications thereof not necessary here to be noticed. The quoted averment was made only because the asserted modification would entitle appellant to a share in the profits arising out of the sales of cross-ties. Appellant is not thereby precluded from proving profits on the sales of lumber secured to him by the contract.

Appellant contended, and offered some testimony to prove, that cross-ties which are sawn on one side, though hewn on the other three sides, are technically considered as lumber. On the other hand, witnesses for appellee testified that anything put under railroad rails, except at bridges and switches, is a cross-tie. We are of opinion that the preponderance of evidence on that subject was with the appellee.

The conclusion is that appellant is entitled to an accounting of the profits arising out of the contract between the parties, dated August 13, 1913, including the profits on lumber, but excluding the profits on cross-ties, sold to the Valley Tie & Lumber Company in December, 1914.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes